Tommy YOUNG, Appellee,

v.

FIRST STATE BANK, WATONGA, Oklahoma, a corporation; D. R. Shipley and Roger S. Folsom, Appellants.

No. 51066.

Supreme Court of Oklahoma.

May 5, 1981.

Stipe, Gossett, Stipe, Harper & Estes, John B. Estes, Oklahoma City, for appellee.

Hastie & Kirschner, George W. Dahnke, Oklahoma City, for appellants.

SIMMS, Justice:

This is an appeal from a judgment entered on jury verdict for plaintiff in an action for malicious prosecution and libel. Appellant First State Bank, Watonga, Oklahoma (Bank) was the defendant below in the malicious prosecution action. Appellants Shipley and Folsom, president and chairman of the board of appellant Bank respectively, were the defendants below in the libel action.

The malicious prosecution action was based on a suit brought by Bank on November 4, 1975, to recover on three notes, and to foreclose a real estate mortgage and a security interest in collateral securing them. Two of the notes were executed by Ray Gerber as president for Watonga Livestock Auction, Inc., and one by Gerber personally. Bank named Gerber, Watonga Livestock Auction, Inc., (Auction) and Tommy Young (Appellee) as defendants in the action. While Young's name did not appear on the notes, he signed the mortgage as secretary of the Auction corporation. On December 9, 1975, Bank dismissed the action with prejudice after receiving payment in full on the notes from defendant Gerber.

Thereafter, Young brought this action against Bank for malicious prosecution, and against Shipley and Folsom for allegedly libelous letters naming Young in connection with the defaulted notes. The jury returned a verdict for Young of $47,000 against Bank, and of $5,000 against Shipley and Folsom.

Bank appeals claiming the trial court erred in overruling its motion for a directed verdict, or in the alternative, a new trial, because Young failed to prove certain essential elements of his cause of action. The appeal was assigned to the Court of Appeals and that Court Affirmed in Part and Reversed in Part the judgment of the trial court. We Grant Certiorari and Vacate the Opinion of the Court of Appeals, and Reverse and Remand the cause.

## I.

■ The plaintiff in a malicious prosecution action has the burden of affirmatively proving five elements: (1) the bringing of the original action by the defendant; (2) its successful termination in plaintiff's favor; (3) want of probable cause to join the plaintiff; (4) malice, and (5) damages. *Towne v. Martin, 196 Okl. 510, 166 P.2d 98 (1946)*. Malicious prosecution actions are not favored by the court, and they should not be encouraged by lax rules favoring them. *Williams v. Frey, 182 Okl. 556, 78 P.2d 1052 (1938)*.

■ Bank's first contention is that Young failed to establish that the original action terminated in his favor. It is conceded that, generally, a dismissal with prejudice is such a favorable termination, but Bank cites the exception that where the dismissal in the original action is procured by the defendant, or done pursuant to a compromise or agreement of the parties, that termination cannot support an action for malicious prosecution. *First State Bank v. Denton, 82 Okl. 137, 198 P. 874 (1921)*.

Young claims that this exception, while valid, does not apply to his action because he did not participate in the settlement, pursuant to which the original action was dismissed. The question whether a settlement done by one defendant bars a codefendant's action for malicious prosecution is a matter of first impression in Oklahoma.

■ Bank cites *Nolan v. Allstate Home Equipment Co., Inc., D.C.Mun.App. 149 A.2d 426 (1959)*, where this issue is addressed. In that case, the plaintiff had been named in an action for money due on merchandise purchased by his former wife. Before plaintiff was served with summons, his former wife paid the debt and the action was dismissed. The court there held that the original proceedings against both parties must be considered as a whole, and that the dismissal done after payment by the former wife was a termination by settlement, and therefore not a termination in plaintiff's favor. This case is not persuasive in Oklahoma. The court noted that since the plaintiff there wasn't served until the action was already dismissed, there was no termination to him at all. More impor-

tantly, the court noted that in the District of Columbia, the plaintiff has no action for malicious prosecution absent an arrest, a seizure of property, or some damage not normally incident to the service of process, none of which was present. In Oklahoma, the mere bringing of a civil suit, without more, is sufficient to support the action.

■ Where the termination is pursuant to a settlement, the action for malicious prosecution is barred because either the settlement is an admission of probable cause for the initiation of the prosecution, or because it would be unfair to allow a person to consent to a termination and then take advantage of it. 52 Am.Jur.2d § 44, Malicious Prosecution. *Jaffe v. Stone, 18 Cal.2d 146, 114 P.2d 335 (1941).*

In *First State Bank v. Denton,* supra, we cited the case of *White v. International Text-Book Co., 156 Iowa 210, 136 N.W. 121 (1912).* The court there held that a settlement bars an action for malicious prosecution only where such settlement is voluntary, intentionally, and understandingly procured by the defendant. The court noted that in a civil case, where the defendant procures the dismissal by the payment of money:

"... the dismissal of the suit pursuant to such a settlement is not a termination thereof in defendant's favor, but, on the contrary, [is] a distinct admission on his part that something is due." (136 N.W. pg. 125)

In the case at bar, the payment of the debt by Gerber should not bar Young's action for malicious prosecution. Young neither procured, consented to, nor participated in the settlement upon which the original action was dismissed. He has made no admission that Bank had probable cause to name him as defendant, nor has he consented to a termination of which he is trying to take advantage. We do not agree with Bank that this holding makes all lawsuits involving multiple defendants a "breeding ground" for malicious prosecution actions, as the other elements required to be proved are sufficient to prevent that result. In fact, this holding is necessary to

effectuate the policy served by such an action. The mere fact that one defendant admits owing the money sued for in no way establishes that another defendant was not wrongfully sued.

II.

■ Bank's second contention is that Young failed, as a matter of law, to establish an absence of probable cause to name him in the original action.

Bank introduced evidence of numerous associations between Young, Gerber, and the Auction which it claims shows that Young was in fact a "secret" partner in the Auction, and gave them probable cause to believe that he could be held jointly liable on the notes. We need not here detail these associations, as they were all contested throughout the trial. For example, Young claimed he signed the mortgage only upon Shipley's insistence, who said he merely needed someone to sign as the secretary since the mortgage was in the name of the corporation, and who knew Young was not in fact the secretary of the corporation.

In *Lewis v. Crystal Gas Co., Okl., 532 P.2d 431 (1975),* the test for probable cause in a malicious prosecution is set out:

"Probable cause for an action does not mean legal cause. If it did, every plaintiff who failed to recover in his lawsuit could be liable to an action for malicious prosecution. Probable cause has been defined as reasonable cause that of an honest suspicion or belief on the part of the instigator thereof, founded upon facts sufficiently strong to warrant the average person in believing the charge to be true."

In *Miller v. Bourne, 208 Okl. 362, 256 P.2d 431 (1953),* we quoted from *Allison v. Bryan, 50 Okl. 677, 151 P. 610 (1915),* that:

" 'What constitutes probable cause is a mixed question of law and fact. [citation omitted] If there is no controversy over the facts, or if the facts are conceded, then it becomes a pure question of law for the court to determine whether there was probable cause or not. It therefore

becomes the duty of the court, when evidence has been given to prove or disprove the existence of probable cause, to submit to the jury its credibility, and what fact it proves, with instruction that the facts found amount to proof of probable cause, or that they do not. [citation omitted]' "

The facts at trial, both to Bank's subjective honesty in believing Young to be liable, and to the objective reasonableness of such belief based on the facts presented, were far from uncontroverted. As such, the matter was properly left to the jury.

### III.

■ Bank's next claim, that it was entitled to a directed verdict because of proof showing it named Young only upon the advice of outside counsel, must similarly fail. Young produced testimony that Bank was acting in direct conflict with advice of counsel by naming Young in the suit. While if uncontroverted, Bank's evidence would be a complete defense to this action, where there is a dispute it is a matter properly left to the jury. *Miller v. Bourne, supra.*

### IV.

■ Bank's next proposition concerns the instructions, which it claims were erroneous on the definition of probable cause, and confusing because they embraced theories of both malicious prosecution and libel. The Court gave, among others, the following complained of instructions:

### INSTRUCTION NO. 9

"As used in this case, the term 'probable cause' means the existence of such facts and circumstances as would lead an ordinary prudent person to believe that the plaintiff should properly have been included as a defendant in the lawsuit brought by the bank; in other words, that he was legally responsible for part or all of the indebtedness or alleged indebtedness sued upon."

### INSTRUCTION NO. 17

"You are instructed that the defendants contend that the lawsuit instituted by the bank against Tommy Young was done in good faith, without malice, for the sole purpose of protecting the corresponding interests of the parties thereto, and that said action was based on probable cause. In order to avail themselves of this defense, it is incumbent upon the defendants to show that they acted in a manner an ordinarily prudent man would have in determining the pertinent facts as they were at the time. If it appears from the evidence that the defendants were not justified in believing that plaintiff had committed the action for which he was afterward sued, then such lawsuit was instituted without probable cause."

### INSTRUCTION NO. 24

"If you find, from a preponderance of the evidence, that the defendant bank did the acts alleged in plaintiff's Petition, without justifiable cause, and that the plaintiff has been damaged thereby, then you should find for the plaintiff and against the defendant bank. In determining the amount that plaintiff is entitled to recover, you may take into consideration what he has been damaged in reputation and standing in the community, if any, and for any loss of reasonable business expectancies resulting in financial loss to plaintiff, if any, and award to plaintiff such sum as you find will reasonably compensate him therefore, but not to exceed the amount of $200,000.00 sued for.

If you find that the actions of the bank were done with malice and an intent to injure plaintiff, you may in addition to actual damages, award to plaintiff a judgment for punitive damages in any sum not exceeding $100,000.00."

Instruction No. 9 is a misleading statement of probable cause. It directs the jury to find that the Bank did not have probable cause unless they find that Young was in fact legally responsible for the indebtedness sued upon. This is a much too restrictive test. A reasonable belief in the *possibility*

that the claim may be held valid is sufficient to give the prosecutor probable cause for instituting such proceedings. *Gray v. Abboud, 184 Okl. 331, 87 P.2d 144 (1939). Towne v. Martin, supra.*

Instruction No. 17 erroneously burdens Bank with the task of proving probable cause to prevail. As mentioned above, it is the plaintiff's affirmative duty to prove *absence* of probable cause by a preponderance of the evidence. This instruction unfairly lessens this burden. It further defines probable cause in terms of justification in believing plaintiff "committed the action" for which he was sued. It was conceded at trial that Young did not commit the action for which he was sued, that is, incurring the debt. Bank's defense rested on the fact that even though Young did not commit the act of borrowing the money, the circumstances were such that he could be held jointly liable anyway.

Instruction No. 24 grossly misstates the law of malicious prosecution in instructing the jury that they may award punitive damages if Bank's actions were done with malice. There can be *no* recovery against Bank, actual or punitive, *unless* the jury finds malice. This instruction tells the jury that malice, an essential element of plaintiff's cause of action, need only be considered in relation to punitive damages, a misstatement that is patently prejudicial.

It is the duty of the trial court, on its own motion, to properly instruct the jury as to all the fundamental issues of the case, and a failure thereof is grounds for a new trial. *Acker v. Hopfeld, Okl., 416 P.2d 953 (1966).* While the instructions as a whole contained some proper statements of the applicable law, they did not correct these erroneous impressions, which, especially since they concerned matters essential to Bank's defense, resulted in prejudice to appellant Bank.

The judgment against appellant Bank is therefore reversed.

## V.

Since this matter may come for retrial, we must discuss Bank's final proposition, relating to damages. Bank claims that Young's evidence of damages was wholly speculative and, as such was improperly admitted and insufficient to support the verdict. Young relies on *Browning v. Ray, Okl., 440 P.2d 721, 724 (1958),* where we said:

"... general damages for injury to reputation and emotional or mental distress, the precise amount of which by their very nature is almost impossible of proof and which damages almost certainly result if one has been maliciously prosecuted, may be awarded if plaintiff has established the other essential elements of an action for malicious prosecution."

Generally, this Court does not distinguish malicious prosecutions of civil cases from those of criminal cases. *Sawyer v. Shick, 30 Okl. 353, 120 P. 581 (1911).* A distinction here, however, must be made. The holding in *Browning v. Ray, supra,* relies on a holding in *Drakos v. Jones, 189 Okl. 593, 118 P.2d 388 (1941),* a case similarly predicated upon an original criminal prosecution. While injury to reputation along with emotional and mental distress may almost certainly result where a person is accused of a crime, such injuries do not always result whenever one is named as a defendant in a civil action.

Because of our disposition of the instructions, we need not determine if Young's evidence of damages was in fact insufficient as speculative. However, when an action for malicious prosecution is based on the wrongful initiation of a civil suit, specific proof of damages must be proved as an essential element, in accordance with general damage principles.

## VI.

Appellants Shipley and Folsom claim the trial court erred in overruling their motion for a directed verdict on the libel action.

Young introduced two letters written in connection with the defaulted loans that the trial court ruled were libelous *per se* to him. One was from appellant Folsom, ad-

dressed to Max Jiles, Dub Jiles and Tommy Young. The other was from Folsom and Shipley, addressed to Tommy Young and Ray Gerber.

■ It is essential in an action for libel for the plaintiff to prove that the alleged defamation was communicated to a third party. *Collins v. Oklahoma State Hospital, et al., 76 Okl. 229, 184 P. 946 (1919).* It is not sufficient to show only that it was communicated to the person defamed therein. *M.F. Patterson Dental Supply v. Wadley, 10th Cir., 401 F.2d 167 (1967).*

■ While Young elicited testimony that the letters were mailed to the named addressees, there is no evidence in the record that they were read by anyone other than himself. While the evidence of mailing may be sufficient to infer that the letters were received,[1] it is insufficient to discharge plaintiff's burden of proving communication to a third party, an essential element of his action.

1. See 29 Am.Jur.2d § 193, Evidence, Evidence Subcommittee's Note, found after 12 O.S.A. § 2303.

Absent any evidence of communication of the alleged defamation to a third party, the judgment against appellants Shipley and Folsom must be reversed.

Certiorari Granted. Court of Appeals Opinion Vacated. Judgment against Appellant Bank and Appellants Shipley and Folsom is hereby Reversed. Action against Bank remanded with directions to proceed in a manner not inconsistent with this opinion.

IRWIN, C. J., BARNES, V. C. J., and WILLIAMS, DOOLIN and HARGRAVE, JJ., concur.

OPALA, J., concurs in part and dissents in part.